UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-61978-BLOOM/Valle

DASYL J. RIOS,

    Plaintiff,

v.

SHERIFF SCOTT ISRAEL, et al.,

    Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendants Scott Israel, Christopher Johnson, and Latoshia Howard's (collectively, "Defendants") Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Certain Portions, ECF No. [41] ("Motion"), which seeks the dismissal of Plaintiff Dasyl J. Rios's ("Plaintiff" or "Rios") Amended Complaint, ECF No. [33] ("Amended Complaint" or "Am. Compl."), pursuant to Fed. R. Civ. P. 12(b)(6). The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record, and applicable law. For the reasons set forth below, the Motion is granted in part.

**I. Background**

Defendants are the Sheriff of Broward County (Israel), and two deputy detention officers (Howard and Johnson). This controversy arises from events that occurred on February 23, 2015. Rios alleges that she was arrested on December 30, 2014, charged with misdemeanor offenses, and placed in the pretrial custody and control of the Broward Sheriff's Office. Am. Compl. ¶ 10. Rios has been diagnosed with mental illness, including extreme bipolar and emotional disorder. *Id*. ¶ 11. According to the Amended Complaint, Rios's mental condition causes her to act

inappropriately, including exhibiting emotional distress and outbursts, and the inability to follow directions. *Id*.

When Rios made her initial appearance for arraignment on January 28, 2015 at the Broward County Courthouse, her hands and feet were shackled. *Id*. ¶ 13. During the proceeding, Rios "acted out," screaming and yelling, and Defendant Howard was summoned to assist in escorting her back to the jail. *Id*. Howard used a wheelchair to transport Rios without incident. *Id*. Rios appeared in court again on February 10, 2015. *Id*. ¶ 14. Rios was again shackled on the hands and legs, and as she did at her previous court appearance, began to yell and scream. *Id*. However, Defendant Howard was again able to escort Rios back to the jail without incident.

On February 23, 2015, Defendants Howard and Johnson escorted Rios to her preliminary hearing. *Id*. ¶ 15. According to the Amended Complaint, Defendant Howard informed Defendant Johnson of Rios's behavior during her previous court appearances so that he was aware of what had occurred. *Id*. Rios was again shackled on this occasion and again became upset during the hearing. *Id*. ¶¶15, 17. After speaking to the presiding judge about a potential transfer to a mental health facility, at the conclusion of the hearing, Rios was hoping to speak to her mother who was seated at the back of the courtroom. *Id*. ¶¶18-19. However, Defendant Johnson did not permit her to do so and forced Rios out of the courtroom. Rios, still shackled and handcuffed, sat down on a public bench and began to cry. *Id*. ¶¶ 19-20. Thereafter, Defendant Johnson told Rios to stand up and walk. When she refused, he pulled her off the bench by the shackles binding her legs and began to drag her on the floor along the hallway, telling her, "Now we'll do it my way," or "Now you're mine." *Id*. ¶ 21. Defendant Howard

walked next to Rios as Defendant Johnson dragged Rios down the courthouse hallways to the jail, and she did nothing to stop Defendant Johnson. *Id*. ¶ 22.

Rios further alleges that her actions following the hearing were not a threat to safety and that Defendant Johnson's statements otherwise contradict statements by other witnesses, including Defendant Howard. *Id*. ¶¶ 23-24. According to Rios, security resources at the courthouse were inadequate as a result of Defendant Israel's failure to assign and train sufficient employees to provide security at the Broward County Courthouse. *Id*. ¶¶ 26, 33.

As a result, Rios asserts the following ten counts for relief against Defendants: excessive use of force in violation of 42 U.S.C. § 1983 against Defendant Johnson (Count I); violation of § 1983 against Defendant Israel in his official and personal capacities (Counts II, III, IV, V); violation of § 1983[1] against Defendant Howard (Count VI); battery and infliction of emotional distress against Defendant Johnson (Counts VII and VIII); *respondeat superior* liability against Defendant Israel in his official capacity (Count IX); and negligent training or supervision against Defendant Israel in his official and personal capacities (Count X). *See generally* Am. Compl. Defendants seek dismissal of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

**II. Legal Standard**

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining

---

[1] In the Amended Complaint, Count VI asserts a "Failure to Intervene 42 U.S.C. § 1982" claim, which the Court assumes to be a typographical error.

that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted). In the Rule 12(b)(6) context, a plaintiff's pleadings should be read as a whole. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1383 (11th Cir. 2010) (interpreting specific language in complaint within the context of the entire complaint); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005) (stating that, in a Rule 12(b)(6) context, "[w]e read the complaint as a whole"). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252,

1260 (11th Cir. 2009) ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations."). Through this lens, the Court addresses the instant Motion.

### III. Discussion

Each Defendant seeks dismissal of the claims asserted against him or her; therefore, the Court will consider each Defendant's arguments in turn.

#### A. Defendant Johnson

Defendant Johnson seeks dismissal of the § 1983 claim for excessive use of force (Count I) against him in his individual capacity based on qualified immunity. "Qualified immunity is an immunity from suit rather than a mere defense from liability." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (quoting *Harlow*, 457 U.S. at 806); *see also Jackson v. Humphrey*, 776 F.3d 1232, 1241-42 (11th Cir. 2015) ("The purpose for qualified immunity is to permit officials to act without fear of harassing litigation as long as they can reasonably anticipate before they act whether their conduct will expose them to liability."). The doctrine "'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v.*

*Briggs*, 475 U.S. 335, 343, 341 (1986)). "To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Kingsland*, 382 F.3d at 1232 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *see O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) ("To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting within the scope of his discretionary authority.") (citation omitted).

Defendant Johnson argues that he was acting in his discretionary authority in attempting to gain compliance from Rios, who was refusing to move. Rios does not appear to dispute that Defendant Johnson was acting within his discretionary authority, but focuses instead upon the next part of the Court's inquiry.[2] Ordinarily, once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the officers violated a constitutional right; and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009); *see also Barbee v. Naphcare, Inc.*, 216 F. App'x 851, 852-53 (11th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001) and *Vinyard*, 311 F.3d at 1346). However, under the Eighth or Fourteenth Amendment, a plaintiff can overcome the qualified immunity defense by showing only a violation of her Eighth or Fourteenth Amendment rights.

---

[2] Rios argues that Defendant Johnson's conduct violated her right to be free from the use of excessive force under the Fourth and Fourteenth Amendments. While Rios is correct that the Fourth Amendment protects citizens from the use of excessive force during the course of an arrest, the due process clause of the Fourteenth Amendment protects a pretrial detainee such as her. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998); *see also Fennell v. Gilstrap*, 559 F.3d 1212, 1215-16 (11th Cir. 2009) (classifying excessive force claim by pretrial detainee under Fourteenth Amendment). "A claim of excessive force under the Fourteenth Amendment is analyzed as if it were an excessive-force claim under the Eighth Amendment." *Fennell*, 559 F.3d at 1216 n.5 (citing *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).

*Fennell*, 559 F.3d at 1216-17 (citing *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)).  Under the Fourteenth Amendment, the use of force against a pretrial detainee is excessive if it "shocks the conscience."  *Id*. at 1217 (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008)) (internal quotations omitted).  Assuming that the force is used "in a good-faith effort to maintain or restore discipline," it does not shock the conscience.  *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotations omitted).  However, the force is excessive if it is "applied maliciously and sadistically to cause harm."  *Id.* (internal quotations and citations omitted).

Rios has alleged that she refused to follow Defendant Johnson's demand that she stand up and walk after being forcefully directed outside the courtroom before she had the opportunity to speak to her mother.  Am. Compl. ¶¶ 19-20.  While shackled and handcuffed, and in response to her refusal to get off the bench where she sat down, Defendant Johnson grabbed the shackles binding Rios's legs, pulled her off the bench onto the floor, and dragged her down the hallway of the courthouse.  *Id*. ¶ 21.  Rios has also alleged that she did not pose a threat to anyone's safety, and that Defendant Johnson acted maliciously, stating "now you're mine," or "now we'll do it my way."  *Id*. ¶¶ 23, 28, 28a.  Taken in the light most favorable to Rios, these allegations are sufficient to overcome Defendant Johnson's claim of qualified immunity at this stage in proceedings with respect to Rios's claim for excessive use of force in Count I.

Defendant Johnson argues further that he cannot be liable individually for any allegedly negligent actions because he is protected by Florida Statutes section 768.28(9).  While the Court agrees generally that section 768.28(9) protects the state subdivisions and their employees from individual liability in tort for negligent actions in the course of their employment, it is unclear precisely how this statement relates to the remaining counts for battery and infliction of

7

emotional distress asserted against Defendant Johnson.  Defendants vaguely acknowledge that "[t]hough no Count[s] exist where individual liability is asserted against Defendant JOHNSON without the presence of malice, to the extent that this Court construes the allegations within the body of the Complaint to make such a claim, these claims should also be dismissed."  Motion at 9-10.

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 09-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)).  "The movant must support its arguments for dismissal with citations to legal authority."  *Id.* (citing S.D. Fla. L.R. 7.1(a)(1)).  "Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal."  *Id.* (citing *Super. Energy Servs., LLC v. Boconco, Inc.*, No. 09-0321, 2010 WL 1267173, at *5-6 (S.D. Ala. Mar. 26, 2010) and *United States v. Vernon*, 108 F.R.D. 741, 742 (S.D. Fla. 1986)).  Defendants have not cited to any subject-related case law or otherwise provided the Court with the elements of the remaining claims against Defendant Johnson that Plaintiff has allegedly failed to plead.  Therefore, with respect to Counts VII and VIII, Defendants' Motion is denied.

### B.  Defendant Howard

Defendants make a similar blanket section 768.28(9)(a) immunity argument with respect to any claim asserted against Defendant Howard to the extent that this action proceeds upon the alternative basis that Defendant Johnson's actions were malicious. By Defendants' reasoning, if Defendant Johnson's actions were indeed malicious, Defendant Howard would be shielded by

section 768.28(9)(a). Defendants again cite to no subject-related case law, nor do they direct their argument to a specific count of the Amended Complaint. Therefore, their argument is not well-taken.

Defendants' argument with respect to Count VI is similarly conclusory and flawed. Defendants address Count VI, the § 1983 claim against Defendant Howard premised upon her alleged failure to intervene, arguing that she is entitled to qualified immunity because dragging Rios was not a constitutional violation, and even if it was, it is not well established that Defendant Howard had an obligation to stop Defendant Johnson. However, Defendants appear to misapprehend the applicable law as requiring that the duty to intervene be well-established, when the correct inquiry is whether Rios's right to be free from the use of excessive force is well-established. *See Vinyard*, 311 F.3d at 1346. Moreover, the Court already determined that the applicable standard with respect to Defendant Johnson's claim of qualified immunity is the Eighth and Fourteenth Amendment, and that such a claim may be overcome by simply showing a violation of those rights. *See supra* at 7. As a result, and for the reasons already stated, Defendants' Motion is denied with respect to Count VI against Defendant Howard.

### C. Defendant Israel

Defendants argue that Counts II, III, IV, V, and X against Defendant Israel should be dismissed because as the Sheriff of Broward County, he is entitled to sovereign immunity for discretionary acts of governmental planning or policy-making. Furthermore, Defendants argue that Count IX asserting *respondeat superior* liability against Defendant Israel in his official capacity for Defendant Johnson's acts of battery and negligence is not cognizable under § 1983. Counts II and IV assert § 1983 claims against Defendant Israel in his official capacity, Counts III and V assert § 1983 claims against Defendant Israel in his personal capacity, and Count X asserts

claims for negligent supervision and training against Defendant Israel in his personal and official capacities. The Court considers each argument in turn.

"When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents ...." *Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005)). According to the Supreme Court, section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). Indeed, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "[I]n order to be held liable for a § 1983 violation, a municipality must be found to have itself caused the constitutional violation at issue . . . ." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citation omitted); *see also Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." (emphasis in original)). Thus, the constitutional deprivation must come at the hands of an official policy or "custom." *See Monell*, 426 U.S. at 690 (stating that local governing bodies may be subject to liability under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). "[T]he touchstone of the § 1983

action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ." *Id*.

"A plaintiff . . . has two methods by which to establish a [municipal actor's] policy: identify either (1) an officially promulgated [ ] policy; or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the [municipal actor]." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice[; h]owever, the custom need not receive formal approval." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. 2014) ("the challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech*, 335 F.3d at 1330 n.6); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) ("[T]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice . . . .").

Rios alleges that Defendant Israel failed to assign a sufficient number of employees to provide necessary security at the Broward County Courthouse, and failed to implement proper training and supervision to deputies.  Am. Compl. ¶ 33.  Furthermore, Rios alleges that Defendant Israel knew that there was insufficient staffing of the courthouse that would likely result in breaches of security, as he had announced such deficiencies on prior occasions to the media.  *Id*. ¶ 40.  Nevertheless, Defendant Israel continued the practice of understaffing and providing insufficient training to courthouse deputies to prevent security breaches.  *Id*. ¶ 41.

11

Rios alleges that Defendant Israel provided only general training about mentally ill or emotionally disturbed individuals. *Id.* ¶¶ 44-49. However, there are no allegations regarding a consistent or widespread practice with respect to the treatment of mentally ill or emotionally disturbed individuals, beyond Rios's conclusory assertion that Defendant Israel's decision to understaff the courthouse and not to provide specific training regarding individuals like Rios was a *de facto* policy. In fact, as pled, the Amended Complaint would lead to the conclusion that until the incident involving Defendant Johnson, deputies like Defendant Howard were able to handle individuals like Rios without incident. Therefore, Plaintiff fails to sufficiently plead section 1983 claims against Defendant Israel in his official capacity, and Counts II and IV are dismissed.

Furthermore, Defendant Israel is protected from suit in an individual capacity in the section 1983 context under a theory of qualified immunity. The Court notes that although Defendants argue that Defendant Israel is entitled to "sovereign" immunity for discretionary functions, the cases cited by Defendant for support refer only to qualified immunity. Therefore, the Court considers Defendants' arguments to the extent that Defendant Israel is claiming qualified immunity. "[T]o state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." *Barr v. Gee*, 437 F. App'x 865, 875-76 (11th Cir. 2011). Plaintiff does not allege that Defendant Israel was personally involved in dragging Rios down the hallway. Therefore, in order to state a viable

claim against Defendant Israel in his individual capacity, Plaintiff would have to sufficiently allege a "causal connection between the action of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. Though Plaintiff attempts to link Defendant Israel's allegedly deliberate understaffing of the Broward County Courthouse and the lack of proper training to the incident involving Defendant Johnson, the allegations are not sufficient to state a plausible claim. Counts III and V are therefore dismissed.

Defendants argue that Count IX should be dismissed because a *respondeat superior* claim is not cognizable under § 1983. Plaintiff counters that Count IX is a state claim permitted by Florida Statutes section 768.28 against Defendant Israel in his official capacity based upon Defendant Johnson's negligence.

Defendant is correct that a governmental body may not be held liable under § 1983 simply for employing a tortfeasor. *Monell*, 436 U.S. at 691-92. However, under Florida law, the state has waived sovereign immunity in tort for the actions of an employee acting within the scope of his or her employment. *See* Fla. Stat. § 768.28(9)(a) (stating in pertinent part, "[t]he exclusive remedy for injury or damage suffered as a result of act . . .of an . . . employee . . . shall be by action against the governmental entity . . ., unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."). Nevertheless, "[a] duty of care is a minimal threshold legal requirement for opening the courthouse doors." *Wallace v. Dean*, 3 So. 2d 1035, 1047 (Fla. 2009) (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)) (internal quotations omitted). To the extent that Plaintiff premises her claim against Defendant Israel in his official capacity upon negligence, Plaintiff has failed to adequately allege an applicable duty. Count IX must therefore be dismissed.

Finally, with respect to Count X for negligent supervision and training against Defendant Israel in his individual and official capacities, Defendants argue that sovereign immunity applies to bar suit. Plaintiff appears to concede that the claim is only properly asserted against Defendant Israel in his official capacity. *See* Resp. at 4 ("As to Count X Israel is liable in his official capacity (akin to BSO) for his negligence in supervising and training Johnson to encounter pretrial detainees such as Rios."). Nevertheless, an individual claim for negligence against Defendant Israel would be barred by sovereign immunity. To the extent that Count X attempts to assert such a claim, it is dismissed with prejudice.

"[A] governmental agency is immune from tort liability based upon actions that involve its discretionary functions." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) (citing *Dep't of Health & Rehabilitative Servs. v. Yamuni*, 529 So. 2d 258, 260 (Fla. 1988) (internal quotations omitted). A discretionary function is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental question of policy and planning." *Cook*, 402 F.3d at 1117-18 (citing *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999). Plaintiff agrees that the establishment of training policies constitutes a discretionary function, but argues that the Amended Complaint challenges the implementation of those policies, not the content of the training, as Defendant argues.

The Amended Complaint alleges that the deputies lacked specific training with respect to interacting with persons who are mentally ill or experiencing emotional disturbance, and specifically notes that the only training provided is through the posting of notices containing general information about encountering such people. Am. Compl ¶¶ 44-48. Even construed in the light most favorable to the Plaintiff, Count X alleges only a challenge to the content of the

14

training—specifically, the alleged lack of training with respect to mentally ill or emotionally disturbed individuals.  Therefore, Plaintiff's negligent supervision claim must be dismissed.  *See Lewis*, 260 F.3d at 1266 (affirming dismissal of negligent training claim because "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning.").

Count X also alleges a claim for negligent supervision based upon Defendant Johnson's actions.  Under Florida law "[n]egligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge or reassignment." *Dept. of Envtl. Protection v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) (citing *Garcia v. Duffy*, 492 So. 2d 435, 438-39 (Fla. 2d DCA 1986)).  In addition, "[t]here must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee."  *Id.* at 661 (citing *Dickinson v. Gonzalez*, 839 So. 2d 709, 713-14 (Fla. 3d DCA 2003)).  The Amended Complaint is entirely devoid of any allegations with respect to Defendant Johnson's employment history or any past incidents involving Defendant Johnson that could fairly be considered to have put Defendant Israel on notice of an issue with him.  Therefore, Plaintiff has failed to adequately state a claim for negligent supervision.

### D.  Motion to Strike

Because the Court dismisses the counts containing requests for punitive damages against Defendant Israel in his official capacity, the Court need not address the propriety of such

requests. Nevertheless, the Court notes that Plaintiff agrees with Defendants that such requests should be properly stricken.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss, **ECF No. [41]**, is **GRANTED IN PART**.

2. Counts II, III, IV, V, IX, and X are **DISMISSED WITHOUT PREJUDICE**, and Plaintiff shall have the opportunity to amend the claims against Defendant Israel, to the extent that they would not be barred by qualified immunity or sovereign immunity.

3. Plaintiff shall file a Second Amended Complaint **no later than January 17, 2017**.

**DONE AND ORDERED** in Miami, Florida, this 6th day of January, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record